IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| AIMEE V. CROWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. _____ |
| | ) |
| BAPTIST HEALTHCARE GROUP, | ) JURY DEMAND |
| d/b/a St. Thomas Physician Services | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, by and through counsel, and alleges the following in her cause of action against Defendant: <u>Count One</u> - Violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e; <u>Count Two</u> - Americans with Disability Act; <u>Count Three</u> - Tennessee Handicap Act; <u>Count Four</u> - Violations of the Tennessee Human Rights Act, T.C.A. §4-21-101 *et seq.*; <u>Count Five</u> - Violations of T.C.A. §4-21-701; <u>Count Six</u>: Violations of the Family Medical Leave Act, 29 U.S.C. 2601 *et.seq.*; and <u>Count Seven</u>: the Common Law of Tennessee.

### JURISDICTION AND VENUE

1. This action is brought under the Civil Rights Act of 1991, 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e; and the Tennessee Human Rights Act, T.C.A. §4-21-101 *et seq*; the Family Medical Leave Act, 29 U.S.C. §2601 § *et.seq.* and the common law of the State of Tennessee.

2. This Court has jurisdiction under 28 U.S.C. §1331 to hear Plaintiff's claims arising under the Constitution and laws of the United States.

3. This Court has jurisdiction under 28 U.S.C. §1343(4) to hear Plaintiff's claims to recover damages and to secure equitable relief under any Act of Congress providing for the protection of civil rights.

4. This Court has supplemental jurisdiction over all state law claims alleged in this complaint under 28 U.S.C. §1367 as there is a common nucleus of operative facts between state and federal law claims.

5. Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. §1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to this claim occurred.

## PARTIES

6. Plaintiff, Amy V. Crowe, is a resident of Rutherford County, Tennessee.

7. Defendant, Baptist Healthcare Group, d/b/a St. Thomas Physician Services, d/b/ is a domestic non-profit corporation located and doing business in Davidson County, Tennessee, and can be served through its Registered Agent E. Berry Holt III, Suite 800, 102 Woodmont Boulevard, Nashville, Tennessee 37205-2221.

## GENERAL FACTUAL ALLEGATIONS

8. Plaintiff was a Caucasian, female employee of Defendant and was thirty-four (34) years of age at the time of her discharge.

9. The Defendant is a domestic non-profit corporation whose business purpose is providing comprehensive healthcare care for patients.

10. Plaintiff was hired as a Patient Services Representative on June 6, 2011.

11. At all times relevant, Plaintiff was inflicted with the conditions known as migraine headaches, sinus headaches and sinusitis. Migraine headaches and sinus headaches are debilitating and painful. Symptoms include a pounding headache, nausea, vomiting, and light sensitivity.

12. Plaintiff is a qualified individual with a disability within the meaning of Section 101(8) of the ADA, 42 U.S.C. Section 12111(8) and that Plaintiff is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of her former position with Defendant employer.

13. Plaintiff was a qualified employee covered under the Family Medical Leave Act, 29 U.S.C. §2601 § *et.seq*.

14. Defendant employer is a person within the meaning of Section of 101(7) of the ADA, 42 U.S.C. Section 12111(7), and Section 701(a) of Title VII of the Civil Rights Acts of 1964, 42 U.S.C. Section 2000e (a), and the Family Medical Leave Act, 29 U.S.C. §2601 § *et.seq*.

15. At all times, Plaintiff was discriminated and retaliated against in her employment based on her need and requests for medical leave.

16. Plaintiff had one supervisor during her employment, Ms. Delnita Nevels ("Ms. Nevels") who had the authority to remedy the work related issues for which she complained and took adverse employment actions against her.

17. Plaintiff had missed work previously due to migraines, and Ms. Nevels was aware of the reason for her absences. Ms. Nevels harassed and belittled Plaintiff regarding her absences from work due to her disabilities.

18. Plaintiff's co-workers were also aware of her condition and would often express concern for her due to this condition.

19. The Plaintiff was never instructed by Ms. Nevels, any employee of Defendant's

3

Department of Human Resources or any other supervisors how to proceed to receive FMLA for her debilitating migraine headaches, nor was she provided the proper documentation to assist her in this manner.

20. From the date of hire on June 6, 2011, until her discharge on February 23, 2012, Plaintiff was not allowed to take breaks other than a lunch break on most days.

21. On many days, Plaintiff was only allowed a 30 minute lunch break instead of the hour her schedule permitted.

22. On February 22, 2012, the day before Plaintiff's termination, Plaintiff suffered from a migraine headache. She informed Ms. Nevels of her condition.

23. On that day, Plaintiff requested her allotted 15 minute morning break due to her migraine headache. Ms. Nevels refused to give Plaintiff her 15 minute morning break, and Plaintiff was not permitted to leave the desk even to use the restroom or get a drink.

24. That same day, Plaintiff was not relieved for her lunch break until thirty minutes after the usual start time. She was only permitted a thirty minute lunch break rather than the full allotted hour. This reasonable accommodation of a 15 minute break and an hour lunch break would have significantly reduced the pain of her headaches such that she could have better executed her job responsibilities.

25. On this same day, Plaintiff had worked a full eight hour day by 4:30 and requested to leave. Ms. Nevels denied her request.

26. On February 23, 2012, Plaintiff continued to suffer from a migraine headache. Plaintiff emailed Ms. Nevels to inform her of her condition and request to leave early to go to the doctor. Ms. Nevels was not in the office when she initially requested to leave early.

27. Plaintiff proceeded to send Ms. Nevels emails requesting to leave early because her migraine had become debilitating and she was having trouble performing her job duties. Plaintiff had already called the doctor and scheduled an appointment.

28. Ms. Nevels did not reply to Plaintiff's emails in a timely manner nor talk with her in person. Ms. Nevels finally responded toward the end of the day, denying Plaintiff's request to leave.

29. After Plaintiff's repeated requests for reasonable accommodations and requests to leave, Plaintiff experienced hostilities from management of Defendant, including but not limited to derogatory comments about her need for an accommodation.

30. Plaintiff was not allowed to contact upper management concerning any incident, and Ms. Nevels threatened Plaintiff with write-ups and "being taught a lesson."

31. At this time, the Plaintiff's migraine gained intensity from the stress of the proceeding events. As Plaintiff could no longer function and needed medical treatment, she informed Ms. Nevels that she was leaving to go to the doctor.

32. At that time, Ms. Nevels demanded Plaintiff's badge and any other property belonging to Defendant, thereby terminating the Plaintiff. At that time she also subjected Plaintiff to verbal abuse.

33. Plaintiff proceeded to her doctor's appointment and obtained a doctor's excuse for being absent from work due to her migraine.

34. Plaintiff's termination was motivated by her disability, her requests to leave and her complaints of discrimination.

35. Throughout her employment, Plaintiff was treated differently from co-workers of another race.

36. On the day prior to her termination, Ms. Nevels sat in her office with her African-American co-workers making inappropriate comments and laughing.

37. African-American co-workers were frequently permitted to leave their desks and lounge in Ms. Nevel's office.

38. Plaintiff attempted to discuss the racial discrimination with representatives from Defendant's Department of Human Resources, but the representatives referred Plaintiff to her manager. However, Ms. Nevels had previously threatened Plaintiff regarding complaints to any member of management, and Plaintiff believed she would lose her job if she did consult her manager.

39. Ms. Nevels made Plaintiff aware that she had people "watching her" and told her she was "never allowed to go over her head about anything."

40. Upon Plaintiff's surrender of her badge, Ms. Nevels remarked that "finally, I am so happy that this is what I wanted the whole time."

41. Plaintiff filed her EEOC Charge and was issued her Right to Sue letter.

## COUNT ONE

### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e

42. Plaintiff incorporates herein by reference the factual allegations outlined in Paragraphs 1 through 41.

43. Plaintiff filed her charge with the EEOC and demanded her Right to Sue Letter.

44. Defendant has over 500 employees.

45. During all times complained herein, Defendant was an employer under the terms of Title VII of the Civil Rights Act, 42 U.S.C. 2000e (b) and (f), and as such Defendant is subject to the rule, regulations and penalties of this law.

46. Defendant engaged in, condoned, and ratified harassing and discriminatory conduct of its employees which resulted in a hostile work environment.

47. Defendant is directly or vicariously liable for disability discrimination under Title VII which results from the discriminatory practices and policies of its supervisors and managers of Defendant.

48. This discrimination on the part of Defendant constitutes a violation of the Plaintiff's rights under Title VII.

49. The discriminatory employment practices, described herein, have caused Plaintiff to experience harm, including loss of compensation, wages back and front pay, and other employment benefits. Plaintiff has further suffered emotional distress, humiliation, indignity and resulting injury and loss along with other damages.

## COUNTS TWO AND THREE

### Violations of the Americans with Disability Act ("ADA") and the Tennessee Handicap Act

50. Plaintiff incorporates herein by reference the factual allegations outlined in Paragraphs 1 through 49.

51. The conduct described herein constitutes unlawful discriminatory practices on the part of Defendant in violation of the Americans with Disability Act and Tennessee Handicap Act.

52. Defendant is a "person" as defined by the Americans with Disability Act and the Tennessee Handicap Act.

53. Defendant did segregate or classify Plaintiff based upon her disability in a way that would tend to deprive her of employment opportunities or otherwise adversely affect her status as an employee.

54. Defendant's decision to terminate Plaintiff and treat her less favorably than her non-disabled counterparts resulted from a knowing and intentional pattern of discrimination in violation of the Americans with Disability Act and the Tennessee Handicap Act.

55. As a direct and proximate result of Defendant's violation of the Americans with Disability Act and the Tennessee Handicap Act, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and other damages.

## COUNT FOUR AND FIVE

### Violations of the Tennessee Human Rights Act Against Defendant

56. Plaintiff incorporates herein by reference the factual allegations outlined in Paragraphs 1 through 55.

57. The conduct described herein constitutes unlawful discriminatory practices on the part of Defendant in violation of the Tennessee Human Rights Act, T.C.A. §4-21-101 *et seq*.

58. Defendant is a "person" as defined by the Tennessee Human Rights Act.

59. Defendant did segregate or classify Plaintiff based upon her disability in a way that would tend to deprive her of employment opportunities or otherwise adversely affect her status as an employee in violation of T.C.A. §4-21-401.

60. As a direct and proximate result of Defendant's violation of the Tennessee Human Rights Act, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and other damages.

8
Case 3:13-cv-00456   Document 1   Filed 05/14/13   Page 8 of 10 PageID #: 8

## COUNT SIX

## Violations of the FMLA

61.     Plaintiff incorporates herein by reference the factual allegations outlined in Paragraphs 1 through 60.

61.     Plaintiff alleges that the intentional acts and omissions as described herein by the defendant constitute violations of the Family Medical Leave Act.

## COUNT SEVEN

## Violations of the common law of Tennessee prohibiting retaliation for protected activity

62.     Plaintiff incorporates herein by reference the factual allegations outlined in Paragraphs 1 through 61.

63.     Defendant's conduct as described above was in retaliation for her requests of an accommodation and complaints of discriminatory treatment.

**WHEREFORE**, Plaintiff prays:

1.      For a jury to be empanelled and a judgment of compensatory damages to include front pay, back pay and emotional suffering;

2.      Punitive damages;

3.      Attorney's fees and the cost of litigation to include expert fees;

4.      Damages for humiliation and embarrassment;

5.      Damages for outrageous conduct and malicious harassment;

6.      All other remedies and injunctions as are necessary and proper to eliminate the discriminatory practices of Defendant;

7.      A judgment against Defendant for prejudgment interest; and

8. Such other relief as this Court deems proper.

Respectfully submitted,

**Allman & Associates**

_____
Andy L. Allman, BPR No. 17857
R. Patrick Parker, BPR No. 16847
103 Bluegrass Commons Blvd.
Hendersonville, Tennessee 37075
Phone: (615) 824-3761 x203
Fax:    (615) 264-2720
andylallman@comcast.net